LEONOR AMÉZAGA WIDOW OF MENDIZÁBAL, ET AL., Petitioners and Appellees, *v.* JUAN T. PEÑAGARÍCANO, ETC., Defendant and Appellant; ESTHER FORT ISERN, ETC., Interveners.

No. 50. Decided May 22, 1962.

---

*Víctor M. Marchán, Nieves Agostini Torres,* and *Miguel Fran-
 quiz Ventura* for the Economic Stabilization Administrator
 of Puerto Rico. *Rivera Zayas, Rivera Cestero & Rúa* for
 appellees. *Álvaro Ortiz* and *Raúl Matos* for interveners.

Division composed of Mr. Acting Chief Justice Pérez Pimentel,
 Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

## JUDGMENT

The only issue involved in the instant case is to determine
whether the trial court acted properly in deciding that the
relationship existing between the parties is governed by the
decision in *Talbert* v. *Hilton Hotels,* 78 P.R.R. 271 (1955),
and is thus not covered by regulations of the Reasonable
Rents Act, Act No. 464 of April 25, 1946, 17 L.P.R.A. §§ 181
to 218. In general terms we said that the lease of a premise
in a hotel for the operation of businesses such as a men's ap-
parel store that render service to the hotel guests is not
covered by the housing regulations by virtue of the provisions
of § 4 of said Act, 17 L.P.R.A. § 184.[1]

Let us examine the facts of the instant case. The heirs
of Mendizábal are the owners of a building located in the
corner of Cruz and Tetuán Streets in San Juan, which was
leased for several years to the Agudos. In said building
the Agudos operated a hotel business known as Palace Hotel.
In *1954* the heirs of Mendizábal repossessed the building and
also became owners of the hotel business, which they continued
to operate as individuals. As of *1956* three premises located

---

[1] In the pertinent part this section, as amended by Act No. 395 of
May 13, 1947 (Sess. Laws, p. 756), provides: "Neither shall the provisions
of this Act be applied to hotels or boarding houses, in so far as concerns
the relation between the person operating said hotel or boarding-house
business and the lodger or tenant thereof."

in the first floor of the building, fronting Cruz Street, were leased to the interveners, in which they established novelty and gift shops.[2]

It is evident that the fact that the owners of the building operate in a part therein a hotel business does not necessarily make the interveners hotel "tenants". The surrounding circumstances in this case are different from those we considered in *Talbert*, for the evidence unmistakably establishes that the contractual relationship of the interveners is with the owners of the building in their capacity of property owners thereof, and not as owners of a hotel business operated in another part of the same building. This finding is buttressed by the fact that the businesses established by the tenants in the aforesaid premises have no relation whatsoever with said business, and it is rather the case of leasing space for commercial uses without the many limitations and requirements imposed by Hilton Hotel to Talbert. In the instant case the location of the premises, fronting a street of recognized commercial traffic in the capital city, suggests that the businesses in question do not render service primarily to the hotel guests, but to the public in general. It suffices to indicate that if the principal purpose was to procure tenants who would establish businesses to serve the guests, it is very significant that two of the premises were leased for the same kind of commercial activity, that is, that of novelty and fine gifts shops.

We repeat that, weighing the evidence as a whole, the instant case does not present a situation of hotel "tenants," but rather one of lessees of the heirs of Mendizábal, who utilize part of their property for the operation of a hotel.

---

[2] Prior to October 1, 1942 these premises had been leased to different persons who utilized them for an accounting office, a music bazaar and another business. The rentals as of July 17, 1946 were $100, $60, and $60 respectively. The Mendizábals charged rentals of $150, $175, and $150 to the interveners.

It being so, and since the judgment appealed from relies exclusively on the decision of the oft-mentioned case, the same should be reversed.

The judgment rendered by the Superior Court, San Juan Part, on July 11, 1960 is reversed.

It is thus decreed and ordered by this Court as witnesses the signature of the Acting Chief Justice.

(s) PEDRO PÉREZ PIMENTEL
*Acting Chief Justice*

I attest:
(s) IGNACIO RIVERA
*General Secretary*